IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| APOTEX INC.<br>150 Signet Drive<br>Weston, Ontario M9L 1T9 and<br><br>APOTEX CORP.<br>2400 North Commerce Parkway, Suite 400,<br>Weston, Florida 33326<br><br>        *Plaintiffs*,<br><br>  v.<br><br>MICHAEL O. LEAVITT, in his official capacity as<br>Secretary of Health and Human Services,<br>200 Independence Avenue, SW<br>Washington, DC 20204,<br><br>ANDREW C. VON ESCHENBACH, M.D., in his<br>official capacity as Commissioner of Food and<br>Drugs,<br>5600 Fishers Lane<br>Rockville, MD 20857<br><br>and<br><br>UNITED STATES FOOD AND DRUG<br>ADMINISTRATION,<br>5600 Fishers Lane<br>Rockville, MD 20857<br><br>        *Defendants*. | Civil Action No. |

**APOTEX'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Apotex Inc. and Apotex Corp. ("Apotex") bring this complaint for declaratory

and injunctive relief against Defendants Michael O. Leavitt, in his official capacity as Secretary

of Health and Human Services ("HHS"), Andrew C. von Eschenbach, in his official capacity as

Commissioner of Food and Drugs, and the United States Food and Drug Administration (collectively, "FDA"). In support thereof, Apotex states as follows:

## NATURE OF THE ACTION

1.    Apotex brings this suit to set aside FDA's refusal to stay the effectiveness of Abbreviated New Drug Application ("ANDA") 76-273 filed by Dr. Reddy's Laboratories, Inc. Absent a stay, Dr. Reddy's will be permitted to distribute generic clopidogrel bisulfate tablets during the remainder of the 180 days during which Apotex is entitled to be the sole generic manufacturer of that drug under the Drug Price Competition and Patent Term Restoration Act of 1984 ("Hatch-Waxman Amendments"), which amended the Federal Food, Drug, and Cosmetic Act ("FDCA"). FDA's action violates the FDCA and must be set aside by this Court under Section 706 of the Administrative Procedure Act ("APA").

2.    Apotex filed the first ANDA for clopidogrel bisulfate tablets containing a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) ("paragraph IV certification") that U.S. Patent No. 4,847,265 ("the '265 patent"), listed as covering clopidogrel bisulfate tablets, was invalid. Under the Hatch-Waxman Amendments to the FDCA, that certification permitted the patent holder and New Drug Application ("NDA") holder, Sanofi-Synthelabo ("Sanofi"), to claim a technical act of patent infringement and initiate suit. *See* 35 U.S.C. § 271(e)(2). Certification also entitled Apotex to 180 days of generic marketing exclusivity. 21 U.S.C. § 355(j)(5)(B)(iv) (2002).

3.    Apotex and Sanofi have been engaged in patent litigation regarding the validity of the '265 patent since 2002. The litigation is now before the United States Court of Appeals for the Federal Circuit ("CAFC") and has been argued and submitted.

4.      Apotex commenced marketing generic clopidogrel bisulfate tablets on August 8, 2006, relying upon the 180 days of generic marketing exclusivity provided under the FDCA. Sanofi moved to enjoin Apotex's marketing as infringing, and a preliminary injunction was entered 23 days into Apotex's exclusivity.  Apotex remains under injunction pending the outcome of the CAFC proceedings and has not enjoyed the benefit of the remaining 156 days of the exclusivity period to which it is entitled under FDCA.

5.      Apotex sought to protect its remaining 156 days of exclusivity by promptly notifying FDA of the injunction entered against Apotex and requesting that FDA process additional ANDAs for clopidogrel bisulfate tablets in a manner that would protect Apotex's 180 days of generic marketing exclusivity.  Notwithstanding this request, FDA approved Dr. Reddy's ANDA 76-273 on January 14, 2008 without any effectiveness condition that would protect Apotex's remaining generic exclusivity.

6.      On February 13, 2008, Apotex filed a Petition with FDA seeking a stay of the effective date of ANDA 76-273 pursuant to 21 C.F.R. § 10.35.  Apotex sought only to stay the effective date of Dr. Reddy's formal approval in a manner that would protect Apotex's remaining 156 days of generic exclusivity but would permit unrestricted generic competition at the end of that exclusivity period.  Despite the fact that the CAFC decision may issue imminently, FDA has not responded to Apotex's Stay Petition.

7.      FDA's action with respect to ANDA 76-273 deprives Apotex of the full benefit of the 180 days of generic marketing exclusivity to which the FDCA entitles it as the first ANDA applicant to file a paragraph IV certification for the '265 patent.  Should Dr. Reddy's commence marketing under ANDA 76-273, as FDA has authorized, Apotex will suffer substantial and

3

irreparable losses of market share, sales and profits. Apotex thus is entitled to relief from this Court:

(a)     Declaring that Apotex is entitled to the full benefit of 180 days of marketing exclusivity for clopidogrel bisulfate tablets, to which Apotex became entitled when it became the first filer of an ANDA for clopidogrel bisulfate tablets containing a paragraph IV certification for the '265 patent; and

(b)     Preliminarily and permanently enjoining FDA from making ANDA 76-273, or any other ANDA relating to clopidogrel bisulfate tablets, effective until the earlier of (i) 156 days after Apotex's entitlement to market clopidogrel bisulfate tablets is restored by action of the CAFC; or (ii) the expiration of the '265 patent.

## PARTIES

8.     Plaintiff Apotex Inc. is a corporation organized and existing under the laws of Canada and has its principal place of business at 150 Signet Drive, Weston, Ontario, Canada M9L 1T9. Apotex, Inc. develops and manufactures quality, lower-priced generic drugs.

9.     Plaintiff Apotex Corp. is a corporation organized and existing under the laws of the State of Delaware, and has its principal place of business at 2400 North Commerce Parkway, Suite 400, Weston, Florida 33326. Apotex Corp. is the United States marketing and sales affiliate for Apotex Inc.

10.     Defendant Michael O. Leavitt is the Secretary of HHS, and the official charged by law with administering the FDCA. He is sued in his official capacity. Secretary Leavitt maintains offices at 200 Independence Avenue, S.W., Washington, D.C. 20201.

11.     Defendant Andrew von Eschenbach is the Commissioner of Food and Drugs. He has been delegated the authority to administer the drug approval provisions of the FDCA through

FDA. He is sued in his official capacity. Commissioner von Eschenbach maintains offices at 5600 Fishers Lane, Rockville, MD 20857.

12.     Defendant FDA is an agency within HHS and an "agency" within the meaning of the APA. FDA maintains offices at 5600 Fishers Lane, Rockville, MD 20857.

## JURISDICTION AND VENUE

13.     This action arises under the FDCA, 21 U.S.C. § 301, *et seq.*, the APA, 5 U.S.C. § 551, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1361.

14.     This Court has personal jurisdiction over the Defendants because they are either located and/or conduct substantial business in, or have regular and systematic contact with, this District.

15.     Venue is proper in this District under 28 U.S.C. § 1391(e).

16.     FDA's agency action or inaction creates an actual controversy for which Apotex is entitled to review and relief under 5 U.S.C. §§ 702, 704-06. Apotex is a legal entity that has suffered a legal wrong and has been adversely affected by final agency action and/or agency action wrongly withheld and thus has standing to maintain this action pursuant to the APA.

17.     There exists an actual, substantial, and continuing controversy between the parties regarding FDA's decision to make Dr. Reddy's ANDA 76-273 effective prior to the exhaustion of Apotex's 180 days of marketing exclusivity under the FDCA. FDA's refusal to safeguard Apotex's remaining exclusivity is an abuse of discretion, arbitrary, capricious, and contrary to law.

## FACTUAL ALLEGATIONS

### Statutory Framework for Approval of New and Generic Drugs

18.     The Hatch-Waxman Amendments to the FDCA govern the approval of generic drugs. Although the applicable provisions of the FDCA have subsequently been amended by the Medicare Prescription Drug, Improvement and Modernization Act of 2003 ("MMA"), Pub. L. No. 108-173 § 1101(c)(1), those revisions do not apply to the ANDAs at issue in this case, which were pending prior to the MMA's enactment. Unless otherwise noted, all references to the FDCA are to the pre-2003 version of the statute.

19.     A person seeking to sell a new chemical entity as a drug must file and gain approval of a New Drug Application ("NDA"). That NDA must provide data on the composition of the drug, clinical trial results establishing the safety and efficacy of the drug, the means of manufacturing it, labeling for the intended uses of the drug, and information with respect to any relevant patents that might be asserted as protecting the drug from competition. *See* 21 U.S.C. §§ 355(b)(1), (c)(2).

20.     Generic drugs contain the same active ingredient, and provide the same therapeutic benefit, as NDA-approved drugs. They are, however, generally sold at a lower price than NDA-approved drugs. Congress enacted the Hatch-Waxman Amendments to streamline and expedite the process of bringing generic drugs to market.

21.     A company seeking FDA approval to market a generic version of a drug previously approved through an NDA may file an ANDA without repeating the safety and efficacy studies conducted for the NDA-approved product. The ANDA applicant must establish that its proposed product is bioequivalent to the NDA-approved drug and, with some exceptions,

6

that it has the same active ingredient, dosage form, dosage strength, route of administration and labeling as the NDA-approved version. 21 U.S.C. § 355(j)(2)(A).

22.    The ANDA applicant must also provide one of four certifications with respect to each of the patents listed in the NDA (and subsequently published by FDA). Among those certifications is a "paragraph IV certification," in which the ANDA applicant declares that the listed patent is invalid or will not be infringed by the product contemplated by the ANDA. *See* 21 U.S.C. § 355(j)(2)(B). A paragraph IV certification signals the ANDA applicant's intent to market its product prior to the expiration of the patent or patents listed as claiming the NDA-approved drug and constitutes a technical act of infringement permitting the NDA holder to commence a patent action under 35 U.S.C. § 271.

23.    If the owner of a listed patent that is the subject of a paragraph IV certification then sues the ANDA applicant within 45 days after receiving notice of the paragraph IV certification, the applicable statute generally forbids FDA from making the ANDA approval effective until at least 30 months after the patent owner's receipt of that notice unless certain specified conditions are met. *See* 21 U.S.C. § 355(j)(5)(B)(iii) (2002).

24.    The Hatch-Waxman Amendments encourage generic companies to challenge pharmaceutical patents by filing paragraph IV certifications in order to get generic products to market prior to patent expiration. The first applicant to submit an ANDA containing a paragraph IV certification and challenge the validity of a listed patent almost inevitably bears the litigation costs and risks inherent in protracted patent litigation.

25.    In order to encourage companies to bear those costs and risks, Congress, through the Hatch-Waxman Amendments, granted 180 days of generic marketing exclusivity as an

incentive for generic manufacturers to file ANDAs on drugs covered by listed patents. The

relevant statutory provision, as it existed prior to the MMA, provides:

> (iv) If the [ANDA] contains a [paragraph IV certification] and is for a drug for which a previous application has been submitted under this subsection [containing] such a certification, the application **shall be made effective not earlier than one hundred and eighty days after—**
>
>> (I) the date the Secretary receives notice from the applicant under the previous [ANDA] of the first commercial marketing of the drug under the previous application, or
>>
>> (II) the date of a decision of a court in an action described in clause (iii) holding the patent which is the subject of the certification to be invalid or not infringed, whichever is earlier.

21 U.S.C. § 355(j)(5)(B)(iv) (2002) (emphasis added). This language demonstrates a clear

congressional intent to provide the first ANDA applicant to file a paragraph IV certification for a

listed patent with the economic benefit of 180 days of generic marketing exclusivity to

encourage prompt challenges to questionable or inapplicable patents. The "not earlier than"

language provides a safety valve to ensure that the 180-day period will not be unfairly curtailed

by, for example, an improvidently granted injunction issued during the period of marketing

exclusivity against a first filer who commences commercial marketing prior to a determination

that a listed patent is invalid or not infringed.

### Apotex's Development of Generic Clopidogrel Bisulfate Tablets and Challenge to Existing Patents

26.    Clopidogrel bisulfate is a drug used to reduce heart attacks and strokes. Sanofi-

Synthelabo and other Sanofi entities (collectively "Sanofi") markets clopidogrel bisulfate tablets

under the brand name Plavix®. Plavix® was approved by FDA on November 17, 1997 under

NDA 20-839. Sanofi listed the '265 patent with FDA, along with another, now-expired, patent.

The '265 patent expires on November 17, 2011.

27.    In November 2001, Apotex filed an ANDA for clopidogrel bisulfate containing a paragraph IV certification challenging the validity of the '265 patent. Apotex's ANDA was the first-filed ANDA relating to clopidogrel bisulfate tablets with a paragraph IV certification.. On March 21, 2002, Sanofi sued Apotex for patent infringement in the United States District Court for the Southern District of New York. *Sanofi-Synthelabo v. Apotex, Inc.,* No. 02-CIV-2255 (S.D.N.Y.).

28.    The statutory 30-month stay triggered by the lawsuit under 21 U.S.C. § 355(j)(5)(B) expired on May 17, 2005, and on January 20, 2006, FDA approved Apotex's ANDA 76-274.

29.    Apotex launched its generic clopidogrel bisulfate product on August 8, 2006, over five years before expiration of the '265 patent. Twenty-three days later, the U.S. District Court for the Southern District of New York preliminarily enjoined Apotex from selling clopidogrel bisulfate product pending the outcome of the patent case. *Sanofi-Synthelabo v. Apotex, Inc.*, 488 F. Supp. 2d 317 (S.D.N.Y. 2006), *aff'd,* 470 F.3d 1368 (Fed. Cir. 2006).

30.    After a bench trial, the district court determined that Apotex had not proven the invalidity of the '265 patent by clear and convincing evidence and entered a permanent injunction. *Sanofi-Synthelabo v. Apotex, Inc.*, 492 F. Supp. 2d 353 (S.D.N.Y. 2007), *appeal pending.* Apotex has appealed the issuance of the permanent injunction to the Federal Circuit, arguing that the '265 patent claims are invalid for anticipation and obviousness. Oral argument was held on March 3, 2008.

31.    If Apotex is successful on appeal, the Federal Circuit will issue a mandate requiring the district court to lift the injunction seven days after its opinion is announced. Fed. R. App. Proc. 41(b). This will permit Apotex to resume selling; however, a timely request by

Sanofi for rehearing and/or rehearing *en banc* will defer the issuance of mandate until Sanofi's request is decided. Thus, Apotex's resumption of sales after a favorable Federal Circuit decision may be deferred for some time.

32.    At least three other manufacturers have filed paragraph IV certifications for the '265 patent in connection with ANDAs for clopidogrel bisulfate and have been sued by Sanofi: Dr. Reddy's Laboratories, Teva Pharmaceuticals and Cobalt Pharmaceuticals.

33.    The district court entered permanent injunctions against both Teva and Cobalt soon after entry of the injunction against Apotex. Both Teva and Cobalt have appealed to the Federal Circuit; however, both cases have been stayed pending the outcome of Apotex's appeal. *Sanofi-Aventis v. Teva Pharms.*, No. 07-1521 (Fed. Cir. Nov. 21, 2007); *Sanofi-Aventis v. Cobalt Pharms.*, No. 07-1522 (Fed. Cir. Dec. 6, 2007) (docket entries staying cases pending issuance of mandate in *Sanofi-Synthelabo v. Apotex, Inc.*, No. 07-1438 (Fed. Cir.)).

34.    Upon information and belief, no injunction was entered against Dr. Reddy's. Instead, Sanofi and Dr. Reddy's entered a stipulated order that requires Dr. Reddy's to provide Sanofi with 10 business days' notice before manufacturing, using, offering to sell, or selling any product claimed under the '265 patent. The stipulation also allows Dr. Reddy's to import clopidogrel bisulfate for sale in the United States immediately upon Apotex's obtaining a favorable result in the appeal pending before the CAFC.

35.    Upon information and belief, FDA has subsequently granted tentative approval to two other ANDAs for clopidogrel bisulfate tablets: ANDA 77-665 (Mylan Pharmaceuticals, tentative approval granted June 18, 2007), and ANDA 78-004 (Roxane Laboratories, tentative approval granted September 26, 2007). "Tentative approval" means that a drug product meets

FDA standards for U.S. marketing, but existing patents and/or exclusivity prevent the drug from being marketed. *See, e.g.,* 21 C.F.R. §§ 314.105, 314.107.

36.     Upon information and belief, on January 14, 2008, FDA gave final approval to Dr. Reddy's ANDA 76-273 for clopidogrel bisulfate tablets without conditioning its effective date to protect Apotex's remaining exclusivity.

37.     On February 13, 2008, Apotex filed a Petition for Stay of Action with FDA requesting that FDA stay the effective date of final approval of Dr. Reddy's ANDA 76-273 and any other pending ANDA for clopidogrel bisulfate tablets until resolution of the patent litigation and the expiration of Apotex's remaining exclusivity should the '265 patent be deemed invalid.

38.     Apotex requested that FDA respond no later than March 15, 2008. To date, FDA has not responded.

39.     Unless this Court grants the relief sought, Dr. Reddy's would be able to commence marketing almost immediately in the event of a CAFC decision of invalidity, while Apotex would remain bound by injunction until the mandate issues. Not only would Apotex be denied its remaining 156 days of exclusivity, but Dr. Reddy's would have a significant head start over Apotex in the marketplace, a marketplace that would be made available only by Apotex's challenge to the '265 patent.

## FIRST CAUSE OF ACTION
### (Violation of the FDCA and the APA)

40.     FDA's grant of unconditional final approval to Dr. Reddy's ANDA and its refusal to allow Apotex to enjoy the remaining 156 days of exclusivity for its generic clopidogrel bisulfate tablets violates the exclusivity regime of the Hatch-Waxman Amendments. FDA's actions are thus in excess of its statutory authority, arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law, in violation of 5 U.S.C. § 706.

41.     FDA's grant of an unconditional final approval to Dr. Reddy's ANDA, thus eliminating Apotex's remaining exclusivity, is final agency action that is subject to judicial review.  Apotex has no adequate remedy at law.

42.     Apotex will suffer substantial and irreparable harm absent the requested relief in the form of lost sales and good will and decreased market share that can never be recovered.

43.     Neither Defendants nor any other entity will suffer cognizable harm if the relief requested herein is granted, and the public interest will be served by such relief.

**PRAYER FOR RELIEF**

Wherefore, Apotex prays that this Court:

A.     Set aside FDA's action denying a stay of ANDA 76-273 as contrary to law, an abuse of discretion, and arbitrary and capricious;

B.     Preliminarily and permanently enjoin FDA from making effective the approval of ANDA 76-273, or any other ANDA for clopidogrel bisulfate tablets, until the earlier of

(i)  156 days after Apotex's entitlement to market clopidogrel bisulfate tablets is restored by action of the CAFC, or

(ii)  the expiration of the '265 patent; and

C.     Provide such other and further relief as the Court may deem just and proper.

Dated: April 23, 2008                    Respectfully submitted,

                                         By: _____

                                         Bert W. Rein (D.C. Bar ID No. 67215)
                                         WILEY REIN LLP
                                         1776 K Street NW
                                         Washington, DC  20006
                                         TEL: 202.719.7000
                                         FAX: 202.719.7049

                                         *Attorney for Plaintiffs*

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Apotex Inc.; Apotex Corp. | Michael O. Leavitt, Secretary of HHS; Andrew C. Von Eschenbach, FDA Commissioner; United States Food and Drug Administration |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 99999
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Wiley Rein LLP
1776 K Street NW
Washington, DC 20006

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
◉ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**◉ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW 405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)**    OR    **○ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

⦿ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

5 U.S.C. § 706, 28 U.S.C. § 2201 et seq.; Plaintiffs seek declaratory and injunctive relief against Defendants.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  DEMAND $ _____  Check YES only if demanded in complaint  JURY DEMAND:  YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE  April 23, 2008  SIGNATURE OF ATTORNEY OF RECORD  *Ben W Ru[signature]*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.